

**FEDERAL DEFENDERS OF THE MIDDLE DISTRICT OF GEORGIA, INC.**

440 Martin Luther King, Jr. Boulevard
Suite 400
Post Office Box 996
Macon, Georgia 31202-0996
Phone: (478) 743-4747 ● Fax: (478) 207-3419 ● Toll Free: (866) 517-8892
www.gam.fd.org

*Executive Director*
Christina L. Hunt

*First Assistant Defender*
Tim Saviello

*Senior Litigator*
Catherine M. Williams

*Assistant Federal Defenders*
Jared S. Westbroek
Michael N. Simpkins
Jessica M. Lee
Jonathan R. Dodson
Erin L. Pinder
Michelle G. Sandler

November 1, 2017

Clerk Toni Harper
United States Court of Appeals for the Eleventh Circuit
1803 United States Courthouse
56 Forsyth St., N.W.
Atlanta, GA 30303

  Re: *USA v. Erickson Campbell*, 16-10128-DD
     Supplemental Brief Pursuant to October 25, 2017 Memorandum to Counsel

Dear Clerk Harper:

  In a memorandum to counsel filed October 25, 2017, the Court ordered the parties in the above-styled case to file letter briefs simultaneously today, November 1, 2017, addressing two issues. Appellant's letter brief follows.

  The first issue, as stated in the memorandum, is whether "the allegedly prolonged nature of the traffic stop affect[s] the validity of Mr. Campbell's consent to search[.]" Mr. Campbell's consent was the fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471 (1963). The unconstitutionally prolonged traffic stop tainted his consent, and officers did not obtain the resulting evidence "by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488.

  In *United States v. Perkins*, 348 F. 3d 965 (11th Cir. 2003), this Court found that an officer's expansion of a traffic stop into a criminal investigation based upon a "hunch" violated the Fourth Amendment. It concluded, "[s]ince Perkins' consent to the search of the car was the product of an unlawful detention, 'the consent was tainted by the illegality and was ineffective to justify the search.' " *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 507-08 (1983)).

  In *United States v. Valdez*, 931 F. 2d 1448 (11th Cir. 1991), this Court also found that an unconstitutional traffic stop tainted the driver's subsequent consent to a search of the stopped vehicle. It consulted *United States v. Berry*, 670 F. 2d 583 (5th Cir. 1982), a seminal case decided by the former Fifth Circuit sitting *en banc*. *Berry* established the framework used in the Eleventh Circuit for determining when an unlawful search or seizure tainted a subsequent consent:

*Compassionate Service, Zealous Advocacy, Ethical Representation*

> "[i]n order to eliminate any taint from an involuntary seizure or arrest, there must be proof that the consent was voluntary and that it was not the product of the illegal detention. Among the [relevant] factors . . . are the temporal proximity of an illegal arrest and confession, intervening circumstances, and the purpose and flagrancy of the official misconduct."

*Valdez*, 931 F. 2d at 1452 (quoting *Berry*, 670 F. 2d at 604-05) (interlineation and ellipsis added in *Valdez* opinion); *see also Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) ("The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant.") (citations omitted.)

**Temporal Proximity**. Here, the District Court found that the officer spent thirty-five seconds asking Campbell questions unrelated to the traffic stop, and asked for consent to search "immediately after asking those questions." R 42 at 5. Indeed, the officer asked for consent to search *during* the unlawful detour from the traffic investigation. This question also added time to the stop.

In *Valdez*, 931 F. 2d at 1452, the pretextual stop tainted the driver's consent when the officer asked for the consent "immediately" after asking the driver if he knew the reason he had been stopped. In *United States v. Chanthasouxat*, 342 F. 3d 1271, 1280 (11th Cir. 2003), an unlawful traffic stop tainted the consent to search given "only three minutes" after the stop, which this Court characterized as "an extremely close temporal proximity between the illegal stop and Chanthasouxat's consent to search . . . ." *See also United States v. Santa*, 236 F. 3d 662 (11th Cir. 2000) (consent to search was tainted when it "came approximately three minutes after DEA agents kicked in [the defendant's] door, entered the apartment, ordered him onto the floor, and handcuffed him."); *United States v. Miller*, 821 F. 2d 546, 550 (11th Cir. 1987) ("consent . . . not sufficiently attenuated" when "request for consent followed almost immediately upon the [unlawful traffic] stop . . . ."); *Royer*, 460 U.S. at 507-08 ("Because we affirm the Florida Court of Appeals' conclusion that Royer was being illegally detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search.") *Perkins*, 348 F. 3d at 971 ("Since Perkins' consent to the search of the car was the product of an unlawful detention, 'the consent was tainted by the illegality and was ineffective to justify the search.' ") (quoting *Royer, supra*.)

That the officer obtained Campbell's consent during, or "immediately" after, his detour from the traffic investigation weighs against a finding that the taint from the unlawful expansion of the stop was purged. Rather, as argued below, the request to consent followed logically from the questioning about contraband. The miniscule time lapse favors a finding that the consent was fruit of the poisonous tree.

**Intervening Circumstances**. In *Berry*, 670 F. 2d at 605, intervening circumstances helped to attenuate the taint of an unlawful seizure. "The appellants were told that they were free to refuse consent to a search and that they could consult with an attorney . . . ." *Id*. But this factor was not "alone determinative" of the issue. *Id*. "Critical considerations [we]re that the appellants were allowed to consult with each other, and that [the officer] invited them to use a telephone when [one appellant] indicated she might want to contact an attorney." *Id*.

In contrast, in *Valdez*, 931 F. 2d at 1452, the officer only informed the defendant he did not have to consent to the search. Although this factor somewhat attenuated the taint from the unlawful stop, it was not "determinative." *Id*. "Unlike the defendants in *Berry*, Valdez was not afforded an opportunity to consult with an attorney, nor was he given by [the stopping officer] any appreciable time in which to reflect upon whether to give or not to give his consent to search the vehicle." *Id* Similarly, in *Miller*, 821 F. 2d at 550, the trooper's having the driver sign a consent form stating that a search was "voluntary" almost immediately after the stop was not a "sufficient intervening circumstance." The trooper "was unclear on whether or how much he emphasized" to Miller that the search was voluntary. *Id.*; *see also United States v. Thompson*, 712 F. 2d 1356, 1362 (11th Cir. 1983) (*Miranda* warnings given between unlawful traffic stop and requesting consent to search were not sufficient intervening circumstances to attenuate taint).

In this case, there were no intervening circumstances. The officer's request to search the car immediately followed his asking Campbell whether the car contained a laundry list of contraband. This Court remarked in *Chanthasouxat*, 342 F. 3d at 1280, "it is difficult to imagine that significant changes in circumstances could arise in a mere three minutes, . . . ." Let alone when there is no time lapse at all.

**Purpose/Flagrancy**. The purpose of Officer McCannon's detour from the traffic infraction was to pursue an unfounded criminal investigation. This Court has repeatedly held that this purpose weighed against finding attenuation, even when the official misconduct was not otherwise flagrant. In *Chanthasouxat*, 342 F. 3d at 1280, it concluded the purpose and flagrancy prong "weighs toward suppression because . . . the initial stop violated Defendants' Fourth Amendment rights." In *Valdez*, 931 F. 2d at 1452, it said "[w]hile the actions of the police in this case can certainly not be described as flagrantly unconstitutional conduct, it is clear, as Almaguer himself has stated, that he had no reason connected with the traffic stop itself to ask Valdez for permission to search the Honda." *See also Thompson*, 712 F. 2d at 1362 (officer's conduct "was not flagrant, but, . . ., he had no arguable basis for the illegal detention."); *Santa*, 236 F. 3d at 678 ("The agent's unlawful conduct in entering the apartment and seizing Ramirez, while not "flagrant," had no legal justification.)

In contrast, where a district court credited "the officer's testimony that their only purpose in entering the home was to ensure their own safety, not to conduct a thoroughgoing search," this Court concluded that, although the protective sweep was arguably unlawful, the officers did not enter the home "for an unlawful purpose," so this factor favored finding attenuation. *United States v. Delancy*, 502 F. 3d 1297, 1312 (11th Cir. 2007). It concluded the protective sweep was not "flagrant," as it was limited, and the officers did not use the evidence they found in the protective sweep to coerce the occupant to consent to the full search.

This case is more like *Valdez*, *Chanthasouxat*, and *Thompson*, all of which involved consent given during an unlawful traffic stop, than *Delancy*, which involved consent given during a protective sweep of a house. While the officer's detour from the traffic investigation was not egregious, it conspicuously lacked any justification, and was a flagrant fishing expedition. Unlike in *Delancy*, the purpose of the constitutional violation – investigating a person without any basis – was not lawful.

**Exploitation**. The above three factors inform "a pragmatic evaluation of the extent to which the illegal police conduct caused the defendant's response." *United States v. Bailey*, 691 F. 2d 1009, 1013 (11th Cir. 1982). "When police exploit their illegal actions to obtain the consent of a defendant, the purposes of the exclusionary rule may be served by denying them the benefit of their improper actions." *Delancy*, 502 F. 3d at 1314.

Here, the sequence of events indicates that Officer McCannon exploited the unlawful detour from the traffic investigation to obtain consent to search. He asked for consent to search right after asking Campbell the questions about whether he possessed contraband. The immediate request to search logically followed from Campbell's answers. After Campbell denied possessing anything illegal, McCannon essentially challenged him to "prove it." Without any intervening circumstances indicating he had a choice, Campbell was backed into a corner. Having stated that there was nothing illegal in his car, he was pressured to stand by his answers and take his chances that McCannon would not find his gun. He might reasonably have felt that his demonstrated cooperation would have resulted in a cursory search, while a refusal, after having stated there was nothing in the car, would be highly suspicious. *Cf. United States v. Elsoffer,* 371 F. 2d 1294, 1298 (11th Cir. 1982) (statement indicating an individual is suspected of carrying drugs "easily could induce a reasonable person to believe that failure to cooperate would lead only to formal detention.") (citation omitted.)

Not only did the questions themselves increase the pressure for Campbell to consent, but each second that he was detained on the side of the road in cold weather increased the pressure. The officer's request for consent to search was part and parcel of the unlawful detour from the traffic stop. He asked for consent to

search during the unlawful detour and the request for consent to search added more time to the stop. Thus, the officer's questions about contraband, his request for consent to search, and his earlier redundant and unnecessary questions about Campbell's specific destination, all prolonged Campbell's detention, and the officer exploited his detour, and the unnecessarily lengthy detention, to pressure Campbell into giving consent to search.

**Policy**. Perhaps minor detours from traffic investigations to fish for contraband are not uncommon. But the Supreme Court has insisted that even brief detours from a traffic stop are unconstitutional when they are not justified. *Rodriguez v. United States*, __ U.S. __, 135 S. Ct. 1609 (2015). Especially with unconstitutional practices that have become all-too-common, the "remedial objectives" of the exclusionary rule "are . . . most efficaciously served" by excluding evidence. *United States v. Calandra*, 414 U.S. 338, 348 (1974). In such a circumstance, the deterrence benefits are substantial, and "outweigh [the rule's] 'substantial social costs.' " *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) (citation omitted). The thirty-five second detour in this case may be "the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." *Boyd v. United States*, 116 U.S. 616, 635 (1886).

**Voluntariness**. The second issue to be briefed, as stated by the Court, is whether "Mr. Campbell's consent to the search [was] an independent act of free will, notwithstanding the alleged unconstitutional prolonged traffic stop[.]"

In *United States v. Blake*, 888 F. 2d 795, 799 (11th Cir. 1989) (citations omitted), this Court identified various factors it had previously relied upon in finding police coercion:

> an officer blocking or otherwise impairing the individual's progress, an officer retaining an individual's tickets or identification, an officer failing to inform the suspect that he or she was free to leave and that he or she could refuse to permit the requested search, an officer physically maneuvering the individual in a particular direction, an officer coercing the individual to move from a public area to a private area or office, an officer asking questions or making statements that would lead a reasonable individual to believe that he or she had been singled out as suspicious, or an officer informing the individual that an innocent person would cooperate with the police.

In addition to the above factors, courts consider the extent of the defendant's cooperation with the officer, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found. *United States v. Purcell*, 236 F. 3d 1274, 1281 (11th Cir. 2001).

Here, the officer obtained Campbell's consent while he still possessed his driver's license. *See United States v. Robinson*, 690 F. 2d 869, 875 (11th Cir. 1982) (in finding consent involuntary, stating "[a]n important factor in our decision is the length of time that Markonni retained Robinson's ticket and driver's license.") He did not inform Campbell of his right to refuse consent. *See United States v. Chemaly*, 741 F. 2d 1346, 1353 (11th Cir. 1984) ("Because the agent retained Chemaly's ticket and passport, removed him from the other passengers for questioning, and did not inform him of his right to refuse consent, we hold that the consent to search was not voluntary and the district court's contrary finding is clearly erroneous.") He had required Campbell to exit his car and stand on the side of the highway in cold weather. *See id.* And Campbell knew that there was a gun in his car, suggesting he Campbell did not feel he had a choice but to consent to the search.

Most importantly, the officers' questions about contraband "would lead a reasonable individual to believe that he or she ha[s] been singled out as suspicious[.]" *Blake*, 888 F. 2d at 799; *see Elsoffer*, 671 F. 2d at 1298 (citation omitted) (questions intimating that a narcotics investigation has focused on a specific individual "easily could induce a reasonable person to believe that failure to cooperate would lead only to formal detention." Indeed, as argued above, the fact that the officer questioned him about contraband in his car immediately before asking for consent to search increased the pressure on Campbell to consent to the search. Thus, irrespective of whether the expanded traffic stop tainted his consent, (1) the questions about contraband, (2) the fact that Campbell was aware there was a gun in the car, (3) his removal from his car to the side of the road, (4) the officer's retention of his driver's license, and (5) the officer's failure to inform Campbell that he could decline to consent, all weigh in favor of finding that Campbell's consent to the search of his car was not voluntarily given.

**Conclusion**. In conclusion, this Court should find that Campbell's consent to search was the fruit of the poisonous tree. Officer McCannon obtained the consent during an unlawful expansion of the traffic stop, and no intervening circumstances purged the taint of the unlawful expansion. Not only was the prolongation of the stop unlawful, but the Fourth Amendment violation served an "unlawful purpose." *Delancy*, 502 F. 3d at 1312. The officer's questions were a blatant fishing expedition, and the officer exploited Campbell's unlawful detention to seek consent to search the car, and to ask questions which pressured him into consenting to the search.

This Court should therefore hold the District Court erred in denying the motion to suppress and in declining to suppress the evidence.

> Respectfully submitted,
>
> *s/ Jonathan Dodson*
> FL Bar No. 0050177
> Appellate Counsel for Mr. Campbell
>
> Federal Defenders of the
> Middle District of Georgia, Inc.
> 440 Martin Luther King, Jr.
> Boulevard, Suite 400
> Macon, Georgia 31201
> Tel:  (478) 743-4747
> Fax:  (478) 207-3419
> E-mail:  jonathan_dodson@fd.org